*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0358P (6th Cir.)
File Name: 03a0358p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

STAMTEC, INC.,
     *Plaintiff-Appellant/*
     *Cross-Appellee,*

     *v.*

ANSON STAMPING COMPANY,
LLC,
     *Defendant-Appellee/*
     *Cross-Appellant.*

Nos. 01-6541/6582

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-00308—William J. Haynes, Jr., District Judge.

Argued: July 31, 2003

Decided and Filed: October 7, 2003

Before: KENNEDY, GILMAN, and GIBBONS, Circuit
Judges.

---

———————

## COUNSEL

**ARGUED:** Winston S. Evans, EVANS, JONES & REYNOLDS, Nashville, Tennessee, for Appellant. Kenneth L. Sales, SALES, TILLMAN & WALLBAUM, Louisville, Kentucky, for Appellee. **ON BRIEF:** Winston S. Evans, EVANS, JONES & REYNOLDS, Nashville, Tennessee, for Appellant. Kenneth L. Sales, SALES, TILLMAN & WALLBAUM, Louisville, Kentucky, Michael G. Mason, NEAL & HARWELL, Nashville, Tennessee, for Appellee.

———————

## OPINION

———————

KENNEDY, Circuit Judge. This case presents an appeal and a cross-appeal from the district court's order granting partial summary judgment in favor of Plaintiff-Appellant and Cross-Appellee Stamtec, Inc. Stamtec argues that the district court erred when it failed to include various payments made to a third party as an element of Stamtec's total damage award and when it failed to award prejudgment interest on the damages award. Stamtec also argues that the district court abused its discretion when it failed to enter a default judgment against Anson Stamping Company (ASCO). Defendant-Appellee and Cross-Appellant ASCO argues that the district court erred when it determined that the issue of Stamtec's lost profits did not present a genuine issue of material fact that precluded summary judgment and awarded Stamtec damages for estimated delivery costs. We **REVERSE** in part, **AFFIRM** in part, and **REMAND** in part.

## I.

ASCO is engaged in the manufacture of stamped metal products. Stamtec is engaged in the sale, service, and engineering of large-scale mechanical presses for industrial applications. Chin Fong Machine Industrial Co. (Chin Fong) is a manufacturer of large-scale presses. Stamtec is a wholly owned subsidiary of Chin Fong.

On April 8, 1996, Stamtec prepared a proposal for the sale of a mechanical press to ASCO for $1,989,000. Stamtec's proposal included the following payment terms: (1) thirty percent payment with the purchase order; (2) thirty percent payment upon sign off at manufacturer; (3) thirty percent payment upon delivery; and (4) ten percent payment upon the completion of press installation. On April 25, 1996, ASCO placed purchase orders for two presses. The ASCO purchase orders included the following revisions to Stamtec's sales proposal: (1) minor changes in the press specifications; (2) a reduction in the purchase price to $1,900,000; (3) a change in the delivery location; and (4) a reduction in the down payment from $570,000 to $200,000 per press. ASCO did not make the required down payment at the time it placed its order. Though Stamtec never waived the down payment requirement, it acted on ASCO's purchase orders.

Stamtec entered into a contract with Chin Fong on April 26, 1996. Chin Fong immediately commenced production of the presses, which were to be specially manufactured for ASCO. The Stamtec-Chin Fong contract provided that Chin Fong would sell Stamtec the presses for $1,600,000 each, or a total of $3,200,000. Stamtec did not make a down payment to Chin Fong presumably because it had not received a down payment from ASCO.

On August 30, 1996, Chin Fong notified ASCO that it would discontinue manufacturing the presses until and unless a down payment was made. At the time, Chin Fong had substantially completed one press and had begun work on the second press.

On October 18, 1996, Chin Fong advised Stamtec that Stamtec would be charged interest and held responsible for any losses if ASCO cancelled its order. Chin Fong further demanded that Stamtec pay a non-refundable $100,000 deposit to Chin Fong, which was to be applied to the purchase price of the first ASCO press. On December 10, 1996, Stamtec paid Chin Fong $80,000 toward the deposit and paid the $20,000 balance on January 3, 1997.

On or about January 9, 1997, Chin Fong issued its first invoice to Stamtec demanding full payment for the first press ($1,600,000) and partial payment for the second press ($640,000 based on forty percent completion). Stamtec did not make any payment.

On November 30, 1997, Chin Fong invoiced Stamtec $213,996 for interest charges on the cancelled orders and $560,000 in storage fees. Stamtec paid the 1997 storage fees on January 23, 1998 and the 1997 interest charge on March 2, 1999. On December 31, 1998, Chin Fong invoiced Stamtec $213,996 in interest charges and $240,000 in storage fees that accrued during 1998. Stamtec paid Chin Fong's interest and storage fee invoices. Stamtec paid the 1998 storage fee on March 2, 1999 and the 1998 interest charge on May 20, 1999.

In October 1998, Stamtec received an order for two presses from Precision Machine & Tool. Stamtec contracted with Chin Fong to manufacture the presses. Chin Fong was able to use many, but not all, of the parts that had been fabricated for the ASCO presses. Chin Fong then forgave Stamtec's obligation to pay the purchase price for the ASCO presses and, instead, required Stamtec to pay a $272,000 salvage loss charge. Chin Fong invoiced Stamtec a $272,000 salvage loss charge on November 10, 1999, and Stamtec paid the charge on March 17, 2000.

On December 18, 1998, the district court granted summary judgment on the issue of liability in favor of Stamtec, adopting the magistrate judge's finding that the parties' conduct subsequent to April 25, 1996 evidenced their intent to be bound by the reasonably certain terms of Stamtec's sales proposal and ASCO's purchase orders. Neither party objected to the magistrate judge's finding of contract liability. On August 23, 2001, the district court granted summary judgment in favor of Stamtec on the issue of damages. The parties timely appealed the district court's order regarding Stamtec's damages.[1] The district court did not determine the date of ASCO's breach and the parties dispute the date that the breach occurred.

## II.

The district court's disposition of a summary judgment motion is reviewed *de novo. Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 709 (6th Cir. 2000). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those facts defined by the substantive law and that are necessary to apply it. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). While a court must draw all inferences in a light most favorable to the non-moving party, it may grant summary judgment if the record, taken as a whole, could not lead a rational trier of fact to find for that party. *Matusushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[1]ASCO's notice of appeal, filed December 7, 2001, included an appeal of the district court's December 18, 1998 order, as well as the magistrate judge's report and recommendation, on the issue of contract liability. ASCO did not file any written objection to the magistrate's finding of contract liability and, therefore, is barred from raising that issue on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).

## A.

ASCO argues that the district court's determination that Stamtec was entitled to $264,880 in damages due to lost profits resulting from ASCO's breach was error because the district court did not make any findings as to whether Stamtec actually experienced any lost profits. ASCO further argues that the lost profits figure is hypothetical and, therefore, presents a genuine issue of material fact that precludes summary judgment. The following facts are not in dispute: ASCO contracted with Stamtec to deliver two presses F.O.B. Louisville for $3.8 million ($1.9 million per press). Stamtec placed a purchase order with Chin Fong for the manufacture of the two presses according to Stamtec's specifications for $3.2 million ($1.6 million per press). The fee paid to Chin Fong did not include any delivery costs; Stamtec bore responsibility for shipping the presses from Taiwan to Louisville. The $600,000 difference between Stamtec's contract with Chin Fong and its contract with ASCO included $264,880 in expected profit and $335,120 in expected delivery, installation and warranty costs. In light in of these uncontested facts, the amount of Stamtec's lost profits does not pose a genuine issue of material fact that precludes summary judgment and the district court was not required to make any specific findings with respect to Stamtec's actual losses. Consequently, we affirm the district court's award of $264,880 in lost profits.

## B.

ASCO argues that the district court erred when it determined that Stamtec's $335,120 estimated delivery costs qualified as overhead and could be awarded as damages under Tennessee Code § 47-2-708(2). Stamtec concedes that the estimated delivery costs are not overhead expenses and that the expenses should not have been awarded as damages under § 47-2-708(2). The district court held that Stamtec was entitled to the estimated delivery costs as overhead under the

rule established in *Mid-South Materials Co. v. Ellis*, 1988 WL 23914 (Tenn. Ct. App. Mar. 16, 1988).[2] The *Ellis* court interpreted the meaning of profit under Tennessee Code Annotated § 47-2-708(2) when the non-breaching party is a seller acting as a jobber. Section 47-2-708(2) states:

> If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with incidental damages provided in this chapter (§ 47-2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

TENN. CODE ANN. § 47-2-708 (2003).

The *Ellis* court concluded that the section intended "to compensate the seller for losses incurred and gains prevented in excess of savings made possible by the breach." *Id.* at *3. "In the case of a middleman or a jobber where there is no cost of delivery that measure usually equals what we call gross profits: the jobber's mark-up, or, in the case of a middleman, the contract price less the middleman's costs of acquiring the goods." *Id.* Further, the court held that overhead savings are not deducted under § 47-2-708(2). *Id.* The *Ellis* court awarded the seller "the difference between the contract price and the cost to the seller of acquiring the goods 'F.O.B. jobsite.'" *Id.* Thus, in *Ellis*, the measure of the seller's lost profits was not adjusted to reflect the seller's saved delivery

---

[2] The district court applied the damages measure provided in § 47-2-708(2) because it found that Stamtec acted as a jobber in this transaction, citing *Ellis*. The parties do not dispute that Stamtec meets the *Ellis* test for a jobber.

costs because the manufacturer, not the seller, was responsible for the cost of delivering the goods to the buyer.

The district court erred by not deducting for Stamtec's saved delivery costs from the measure of Stamtec's lost profits. *Ellis* makes clear that where there is no delivery cost, a jobber's measure of damages under § 47-2-708(2) is gross profits, without any reduction for saved overhead. But where a jobber's contract price includes saved delivery costs, the measure of damages under § 47-2-708(2) is gross profits (no reduction for overhead) less the saved delivery cost. Thus, under *Ellis*, the measure of Stamtec's damages under § 47-2-708(2) is the contract price ($3.9 million) less Stamtec's cost of acquiring the presses ($3.2 million) less the saved delivery costs ($335,120), or $264,880. Consequently, we reverse the district court's award of delivery costs as an element of Stamtec's measure of lost profits.

Stamtec next argues that the district court erred when it refused to include the $100,000 deposit and $272,000 salvage loss charge paid to Chin Fong as "costs reasonably incurred" under § 47-2-708(2) or, in the alternative, as an element of incidental damages under § 47-2-710. The district court determined that the deposit was a transaction-specific payment and, as such, did not qualify as a recoverable overhead expense. The district court determined that the salvage loss charge fell within the definition of consequential damages, which are not recoverable by a seller. ASCO contends that the district court properly excluded these costs as consequential damages. ASCO does not contend that it was commercially unreasonable for Stamtec to pay the charges.

Though a deposit paid by a jobber to a manufacturer may be recovered as a cost reasonably incurred, Stamtec's payment of the $100,000 deposit was commercially unreasonable. Under the "due allowance for costs reasonably incurred" provision of § 47-2-708(2), those costs reasonably

incurred by a seller or jobber prior to the buyer's breach, such as a jobber's payment of a non-refundable deposit to a manufacturer, are recoverable. *Giantonio's Pastry Shop v. Champagne & Co., Inc.*, 1986 WL 3704, at *3 (Ohio Ct. App. Mar. 25, 1986) (holding that a jobber is entitled to recover non-refundable deposit paid to manufacturer as cost reasonably incurred prior to buyer's breach under R.C. 1302.82(B), the Ohio version of Tennessee Code § 47-2-708(2)). Stamtec's conduct, however, was not commercially reasonable. Stamtec's payment consumed a large proportion (almost forty percent) of the profit it expected to earn on its contract with ASCO. Stamtec's payment of the deposit was commercially unreasonable for several reasons. First, when Stamtec paid the deposit for the first ASCO press in December 1996 and January 1997, the press was substantially complete. At that time, ASCO had not only breached the contract downpayment term but had arguably breached the contract term that required ASCO to inspect the completed press and make an additional payment against the purchase price. Given ASCO's failure to meet any of its obligations under the contract, it was commercially unreasonable for Stamtec to advance nearly forty percent of its expected profits from the ASCO contract. Stamtec's conduct did nothing to preserve its position relative to the measure of its lost profits owed as damages; rather it inflated ASCO's potential damages liability by almost forty percent. Accordingly, we affirm the district court's refusal to include the $100,000 deposit as an element of Stamtec's damages because the cost was not reasonably incurred.

Next, Stamtec argues that the $272,000 salvage loss charge assessed by Chin Fong in March 2000 is recoverable as a "cost reasonably incurred" under § 47-2-708(2) or, in the alternative, an element of incidental damages under § 47-2-710. The district court refused to award Stamtec recovery on the ground that the salvage loss payment constituted consequential damages, which are not available to an aggrieved seller. ASCO, again, contends that the district

court properly excluded these costs as consequential damages. ASCO does not contend that the charges were commercially unreasonable.

The $272,000 salvage loss charge is not recoverable under § 47-2-708(2) as a cost reasonably incurred because the charge occurred after ASCO's breach.[3] Nor may the charge be recoverable as an element of incidental damages. Tennessee Code Annotated § 47-2-710 states:

> Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses, or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with the return or resale of the goods or otherwise resulting from the breach.

Tenn. Code Ann. 47-2-710 (2003).

Although the record is not totally clear on this matter, it appears Chin Fong presumably imposed the salvage-loss charge on Stamtec because Stamtec breached its contract with Chin Fong. All parties agree that ASCO was not a party to the Stamtec-Chin Fong contract, and the Stamtec-Chin Fong contract did not expressly incorporate the Stamtec-ASCO contract. ASCO's breach of its contract with Stamtec was therefore neither necessary nor sufficient for Stamtec to breach its contract with Chin Fong. As a practical matter, of course, Stamtec breached its contract with Chin Fong because ASCO would not fulfill its payment obligations to Stamtec. But that means that the salvage-loss charge imposed by Chin Fong on Stamtec was a consequence of ASCO's breach, rather than a direct result of ASCO's breach. Regardless of

---

[3]Though the parties dispute the exact date of ASCO's breach, the salvage loss charge was levied at a point in time when the parties do not dispute that ASCO was in breach.

the date of ASCO's breach, therefore, the salvage-loss charge is an element of consequential, not incidental, damages. *Firwood Mfg. Co. v. Gen. Tire, Inc.,* 96 F.3d 163, 169-71 (6th Cir. 1996) (distinguishing between incidental and consequential damages under the Uniform Commercial Code, as adopted by Michigan.) Thus, we affirm the district court's refusal to permit Stamtec to recover the salvage cost as an element of incidental damages.

Finally, Stamtec argues that the district court erred when it refused to include the $800,000 storage charge paid to Chin Fong as an element of its incidental damages under § 47-2-710. Stamtec paid Chin Fong a total of $800,000 in storage charges; a $560,000 storage charge was assessed for the period from November 1, 1996 through December 31, 1997 and a $240,000 storage charge was assessed for the period from January 1, 1998 through December 31, 1998. Though the district court found that storage charges may be recoverable as incidental damages, the court denied recovery because it found that Stamtec had failed to prove the storage cost losses with reasonable certainty. While we find that the district court erred in treating the total amount of storage charges as incidental damages,[4] we agree with the district court that Stamtec cannot recover any of its storage costs because it failed to prove the commercial reasonableness of the amount.[5] *Nashland Assocs. v. Shumate*, 730 S.W.2d 332, 334 (Tenn. Ct. App. 1987) (holding that Tennessee law does not permit the recovery of speculative or uncertain damages).

---

[4]As discussed above, costs incurred prior to a breach may be recoverable as costs reasonably incurred under § 47-2-708(2), while costs incurred following a breach may be recoverable as incidental damages under § 47-2-710.

[5]The only evidence with respect to the reasonableness of the amount of the storage charge was testimony given by Don Chi, who served at the time as both an officer of Stamtec and an officer of Chin Fong.

### C.

Stamtec argues that it is entitled to recover prejudgment interest as an element of its damages arising from ASCO's breach. First, Stamtec argues the $427,992 interest charge payments made to Chin Fong are recoverable as an element of incidental damages under § 47-2-710. Second, Stamtec argues that it is entitled to recover interest based on the one percent penalty term Stamtec claims was included in its contract with ASCO. In the alternative, Stamtec argues that it is entitled to interest based on its lost use of money under § 47-2-710. The district court refused to permit Stamtec to recover either the Chin Fong interest charges or interest based on its loss use of money under § 47-2-710 because the court concluded that such interest costs are consequential damages that are not available to an aggrieved seller, citing *Firwood Mfg. Co.*, 96 F.3d at 169. The district court also refused to permit Stamtec to recover interest under the one percent penalty term because that term was not a part of the parties' contract.

As an initial matter, the district court's finding that the penalty term was not a part of the Stamtec-ASCO contract is supported by the record. Stamtec's vice president testified "he was not sure the page of the contract dealing with that *subject* was included in ASCO's copy of the contract nor was the item billed to defendant before the action was filed.

Nor did the district court err when it concluded that Stamtec could not recover either the interest charges paid to Chin Fong or interest based on its lost use of money because these costs are consequential damages, which are not available to an aggrieved seller. Like the district court, we find the reasoning in *Firwood* persuasive. The *Firwood* court considered whether an aggrieved seller could collect the cost of its lost use of money (interest) as an element of its incidental damages. The *Firwood* court began by noting that the Uniform Commercial Code entitles sellers to collect

incidental, but not consequential damages. *Id.* at 169. Focusing on the issue of how Michigan had defined incidental damages, the court found that Michigan courts had not permitted an aggrieved seller to collect interest payments on a loan secured to maintain a business after a buyer's breach on the ground that such interest payments fell within the definition of consequential damages. *Id.* at 170. Because the Michigan courts had not addressed the specific issue of incidental damages arising from the lost use of money, the *Firwood* court considered the competing positions taken by the Seventh and Second Circuits. In doing so, the *Firwood* court looked to the general structure of the Uniform Commercial Code for guidance. The *Firwood* court "agree[d] with the Seventh Circuit's view that sellers are not entitled to [lost use of money] as an element of the damage award" because "a foregone profit from exploiting a valuable opportunity that the breach of contract denied to the victim of the breach fits more comfortably under the heading of consequential damages than of incidental damages." *Id.* at 171 (quoting *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358 (7th Cir. 1985)). The *Firwood* court "decline[d] to follow the Second Circuit's embrace of an expansive definition of incidental damages because "[that] Court appeared to conflate the definition of consequential damages with that of incidental damages" when it determined that recovery depended on whether the interest payments were foreseeable, an element of the test for consequential damages. *Id.* at 170 n.2. Thus, it was the considered opinion of the *Firwood* court that the general structure of the Uniform Commercial Code precluded the award of interest, whether claimed as charges arising from a bank loan or the buyer's lost use of money, as incidental damages because such costs fell outside the immediate buyer-seller transaction.

We believe that the *Firwood* court was correct in its analysis of recoverability of interest costs as an element of incidental damages. We do not see a meaningful distinction between costs incurred due to the lost use of money and

interest paid on a commercial loan. Each involves a financial transaction that falls outside the immediate scope of the buyer-seller transaction at issue: the first involves a bank transaction necessary to maintain an entity's financial viability and the second involves a transaction with an unspecified party that would produce uncertain results. Thus, we conclude that the Tennessee Uniform Commercial Code, which adopted the relevant Uniform Commercial Code provisions without modification, does not permit a seller's claim for damages based on either lost use of money or interest paid to a third party (which is analogous to interest paid on a commercial loan) because these costs represent consequential damages. Given that a seller is not entitled to consequential damages, and the Commercial Code portion of the Tennessee law precludes the award of consequential damages except as specifically provided by statute, TENN. CODE ANN. § 47-1-106(1), Stamtec cannot recover the interest-charge payments made to Chin Fong nor the cost of its lost use of money as an element of incidental damages under § 47-2-710.

Prejudgment interest may, however, be awarded under Tennessee Code Annotated § 47-14-123, which provides, in relevant part,

> Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum. . . . In addition, contracts may expressly provide for the imposition of the same or a different rate of interest to be paid after breach or default within the limits set by § 47-14-123.

TENN. CODE ANN. 47-14-123 (2003). Section 47-14-123 permits an aggrieved seller's damage award to include an

amount for prejudgment interest as a matter of equity, rather than as a form of incidental damages.

Stamtec argues that it is entitled to prejudgment interest under § 47-14-123 because fairness requires a plaintiff to be fully compensated by a defendant for losses incurred, including the lost of use of money. The Tennessee Supreme Court has held that, under § 47-12-123, "the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). In reaching an equitable decision, "a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing." *Id.* Though courts traditionally have awarded interest in cases where the amount of the obligation is certain and the existence of the obligation is not disputed on reasonable grounds, "[t]he uncertainty of either the existence or the amount of an obligation does not *mandate* denial of prejudgment interest." *Id.* at 928. The Tennessee Court of Appeals found that *Myint* "shifted the balance to favor awarding prejudgment interest whenever doing so will more fully compensate plaintiffs for the loss of use of their funds," and concluded that "[f]airness will, in almost all cases, require that a successful plaintiff be fully compensated by the defendant for all losses caused by the defendant, including the loss of use of money the plaintiff should have received." *Scholz v. S.B. Int'l, Inc.,* 40 S.W.3d 78, 83 (Tenn. Ct. App. 2000).

The district court stated that its conclusion that interest charges were not recoverable as incidental damages under § 47-2-710 did not bar an award of prejudgment interest under Tennessee law. The district court, however, did not grant Stamtec's request for prejudgment interest under § 47-14-123. Stamtec filed a motion to alter or amend again seeking prejudgment interest under the statute, which the

district court summarily denied. In light of the Tennessee Supreme Court's presumption in favor of granting prejudgment interest under the statute, we remand the question so that the district court can provide a reasoned decision on this issue.

### D.

Stamtec argues that the district court erred when it did not grant its motion for entry of a default judgment. Stamtec urged the district court to enter a default judgment against ASCO on the ground that an ASCO representative's deposition testimony in this case conflicted with the testimony given by that same person in another lawsuit. We agree with the district court that its finding of liability on the part of ASCO moots the conflicting testimony issue.

### III.

In sum, we reverse the district court's decision to include Stamtec's estimated delivery costs in its damages award. We affirm the district court's decision to award Stamtec $264,880 in lost profits and to exclude Stamtec's payment of the Chin Fong storage, salvage loss, and interest charges from the damages award, as well as its decision to deny damages based on the interest term allegedly included in the contract. We also affirm the district court's decision to deny Stamtec's motion for default judgment. Finally, we remand Stamtec's claim for prejudgment interest under § 47-14-123 for additional proceedings.