NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0661n.06
Filed: September 1, 2006

No. 05-5300


UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


STAMTEC, INC.,

     Plaintiff-Appellee,

v.

JOHN ANSON; PAM ANSON; ANSON
INDUSTRIES, LLC, A KY Limited Liability
Company; ANSON MACHINE AND
MANUFACTURING COMPANY, LLC, KY
Limited Liability Company; FRANKFORT
PROPERTIES LIMITED LIABILITY
COMPANY, KY Limited Liability Company;
BOURBON COUNTRY PRODUCTS., INC.,
KY Corporation,

     Defendants-Appellants.

_____/

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF KENTUCKY


BEFORE:    BATCHELDER, CLAY, and  McKEAGUE, Circuit Judges.

     CLAY, Circuit Judge.  Defendants John Anson; Pam Anson; Anson Industries, LLC; Anson

Machine and Manufacturing Co., LLC; Frankfort Properties, LLC; and Bourbon Country Products,

Inc. ("Anson Defendants"), appeal the district court's grant of Plaintiff Stamtec, Inc.'s ("Stamtec")

Motion For Sanction of Default Judgment, and entry of judgment joint and severally, in the amount

of $264, 880 plus accrued interest against them.[1] For the reasons set forth below, we **AFFIRM** the judgment of the district court in part and **VACATE** it in part.

## BACKGROUND

This appeal arose as a result of a separate action between Plaintiff Stamtec and Anson Stamping Company, Inc. (not a party to this action) that originally commenced in the United States District Court for the Middle District of Tennessee. According to the complaint, in March 1996, Anson Stamping entered into an agreement with Stamtec to purchase two mechanical presses from Stamtec, for a total price of $3,800,000.00. Anson Stamping never paid Stamtec for these presses, and Stamtec filed suit, eventually winning a $600,000 judgment against Anson Stamping, that was reduced to $264, 880.00 by this Court on appeal. *See, Stamtec, Inc. v. Anson Stamping Co., LLC*, 346 F.3d 651, 654 (6th Cir. 2003).

On July 8, 2002, Plaintiff filed the present action, seeking to hold John Anson, Pam Anson, Bourbon County, Frankfort Properties, Anson Industries and Anson Machines jointly and severally liable for the judgment that was entered in Plaintiff's favor.[2]

On November 26, 2002, Plaintiff propounded interrogatories and document requests to Defendants. Defendants objected to all the interrogatories without answering any of the specific

---

[1] John Anson is sole owner of Anson Stamping and Anson Machine and Mfg.; John and Pam Anson jointly own Frankfort Properties; Anson Industries is owned by Anson Machine and Mfg; John Anson is President of Bourbon Country Products, which lists no assets. All of these are limited liability companies incorporated under the laws of Kentucky.

[2] The United States District Court for the Middle District of Tennessee, finding that venue was improper, *sua sponte* transferred the case to the Western District of Kentucky on March 11, 2003.

questions asked. On January 7, 2003, Plaintiff filed a Motion to Compel Discovery and For Award of Attorneys Fees, seeking to compel Defendants to respond to the interrogatories and produce the requested documents. Plaintiff then filed a Renewed Motion to Compel Discovery and for Award of Attorney Fees on January 29, 2003. The magistrate judge issued an order granting that motion on July 25, 2003, finding that Plaintiff was fully entitled to the discovery requested and that Defendants' failure to respond would continue to prejudice Plaintiff. Defendants were given twenty days to respond to the discovery requests.

On August 15, 2003, Defendants filed a Motion for Extension of Time to Complete Discovery Responses, requesting an additional forty-five days to comply with the request on the grounds that old counsel was going to withdraw and new counsel, Donald Darby ("Darby") was to enter an appearance. On September 3, 2005, the district court entered an order denying Defendants' Motion For Extension of Time, finding that Defendants filed the motion "[o]ne day *after* the twenty-day time limit for complying with the order expired on August 14, 2003." (J.A. at 112.) Defendants were ordered to "provide discovery responses forthwith." (J.A. at 113.) On September 30, 2003, Plaintiff filed a Motion to Impose Sanction of Default Judgment. Darby filed a response to Plaintiff's motion on October 7, 2003. On October 21, 2003, Plaintiff filed its Reply Memorandum in Further Support of Motion to Impose Sanction of Default Judgment, arguing that Defendants served supplemental answers to the first interrogatories that were improper and evasive. On November 19, 2003, the magistrate judge conducted a status conference, and scheduled a hearing before the district court judge on Plaintiff's Motion for Sanction of Default Judgment ("Motion for Default Judgment") for December 17, 2003.

During the December 17, 2003 hearing, the district court indicated that there was an "abundance of proof" that would justify granting Plaintiff's Motion for Default Judgment. The district court expressed frustration over what it considered to be Defendants', and particularly John Anson's, evasive behavior and delaying tactics. "I'm looking here in December of 2003 with [sic] a party that has been played with for a year by these defendants in trying to get this information under way. And even after a court order it wasn't done." (J.A. at 365.) The district court allowed Defendants' counsel Darby to explain Defendants' position, but kept coming back to the lack of answers to the interrogatories, even going through the interrogatories individually to make the point that they had not been answered. "These interrogatories, as I see them here, were not answered in a timely fashion. The orders of this Court were not complied with. And as we sit here today, they have not yet been fully answered." (J.A. at 361.) "Whatever happened, the Magistrate Judge ordered full compliance a long time ago, and it hasn't happened . . . I have a distinct flavor here that there has been a 'let's see how much we can get away with' in this case." (J.A. at 361.)

In its final analysis, the district court was frustrated that court orders six months old had not been complied with. "This has gone on so long. We have a court order that was entered in July, and we have an extension of time that was denied. And still, we don't have this information produced – even partially in some cases." (J.A. at 398.) The district court told the parties that "the courts are very reluctant to impose sanctions of judgment for failure to comply with discovery . . . But there's always the question, how much can you get away with before the line snaps and you are out of rope? I think that there is enough here for the line to snap." (J.A. at 399.) But yet, the district court still did not impose the sanction of default judgment against Defendants at that time, giving Defendants

the opportunity to sort the matter out, but admonishing Darby that Defendants were getting "the last bite in the apple." (J.A. at 403.)

Following the December 17, 2003 hearing, the district court issued an order denying Plaintiff's Motion for Default Judgment without prejudice, but stating that "there was strong evidence of a pattern of delay, obfuscation, partial and incomplete answers and production, and failure to comply with the magistrate judge's orders such that the court would be justified in sanctioning the defendants." (J.A. at 215.) The district court warned that it would permit Plaintiff to refile the motion "if this effort to bring the discovery practice in this case into line with the requirements of the [F.R.C.P.] proves unavailing." (J.A. at 216.) The district court did, however, grant Plaintiff's attorney $3,260 in compensation for the hours spent in attempts to obtain compliance with the magistrate's discovery orders.

In the Spring of 2004, Darby informed Plaintiff of a pending arbitration proceeding between non-parties Anson Stamping and General Electric ("GE"). Darby told Plaintiff that Anson Stamping was going to be awarded a judgment in that action that would likely be sufficient to satisfy the amounts owed Plaintiff. On May 28, 2004, Plaintiff propounded document requests, seeking production by John Anson of all documents related to the arbitration between Anson Stamping and GE. John Anson resisted producing those documents, however, so Plaintiff filed a motion to compel. John Anson then claimed that the documents were subject to a confidentiality agreement.

On July 6, 2004, Plaintiff filed a Motion to Impose Sanction of Default Judgment or, In the Alternative, for Order Compelling Production of Documents, seeking a response to the May 28, 2004 document request. John Anson responded, stating that he would not produce the documents because

of the confidentiality agreement. On August 10, 2004, the magistrate judge convened a telephone conference with all the parties. During the August 10 hearing, Darby informed the court that GE had filed an action in federal court to set aside the judgment and vacate the arbitration award, and that the district court judge in that case had sealed the record. The magistrate judge verified that information and convened a second telephone conference the next day on August 11, 2004. According to the magistrate judge's order issued after the conference, Darby offered to contact counsel for GE to determine whether GE would informally agree to provide the documents to Plaintiff.[3] However, the magistrate judge counseled against this approach, instead recommending that all the parties to the present action tender an agreed order to the court handling the arbitration dispute, asking that court to alter the seal and allow the documents to be produced. Barring that, the magistrate judge advised Plaintiff that it could move to intervene in the arbitration action as a judgment creditor. The magistrate judge denied without prejudice, Plaintiff's motion for default judgment.

During a subsequent telephone conference on August 27, 2004, Darby told the Court that GE would not enter into an agreed order, and thus the magistrate judge entered an order stating Plaintiff's intention to file a motion to intervene in the arbitration action to obtain the records that were the subject of the pending motion. Plaintiff filed its motion to intervene in the arbitration action on September 10, 2004. GE responded to that motion indicating that it had no objection to entering into an agreed order, that it would have agreed to such an order even without the motion to

---

[3]Defense counsel Darby denies that he offered to contact GE's counsel, and instead claims that he was not aware that it was his duty to contact GE because the magistrate judge never established who was to contact GE. (J.A. at 289.)

intervene, that no one had ever approached it about the production of the documents, that the confidentiality clause was invalid, and that GE had not sought to seal the records of the arbitration. Anson Stamping and Defendant Anson Machine & Mfg., in fact filed an objection to Plaintiff's motion to intervene, stating that it would violate the confidentiality clause for Plaintiff to intervene.

On September 22, 2004, Plaintiff filed a Renewed Motion to Impose Sanction of Default Judgment. The magistrate judge held another telephone conference on October 6, 2004. During that conference, Darby claimed that he was not aware of the fact that he was expected to contact GE, and that there was a misunderstanding between the parties. On October 19, 2004, the magistrate judge entered an order allowing Plaintiff to file a supplemental motion for imposition of attorney's fees and costs, allowing Defendants to file any response, and accepting Plaintiff's Renewed Motion to Impose Sanction of Default Judgment as submitted to the district court. In the October 19 order, the magistrate judge detailed the recent dispute over the arbitration documents and expressed its outrage over Defendants' behavior.

The magistrate judge opined that "Darby left the Court and opposing counsel with the definite, yet incorrect, impression that he had honored his promise to contact GE and that GE had refused to submit an agreed order;" and that as a result of that misrepresentation, Plaintiff filed an unnecessary motion to intervene, making false allegations against GE. According to the magistrate judge, Darby made a "faltering apology" to the court. (JA. at 290.) The magistrate judge expressed his frustration with Darby, stating the following:

> The written word cannot adequately convey the growing frustration of the Magistrate Judge with the manner in which this situation has unfolded. It is clear that attorney Darby has not been forthcoming with the court. Candor with the Court is a cornerstone of proper conduct before the court . . . Just as certainly, his conduct has

unnecessarily complicated and delayed the resolution of a discovery dispute that otherwise would have been a simple matter. The Court presently has a sufficient case load to occupy itself without casting about for more disputes to resolve, particularly needless ones. The conduct exhibited in this entire sorry affair by attorney Darby is distinctly unpraiseworthy.

(J.A. at 291.) The magistrate judge was not able to rule on Plaintiff's motion for default judgment, but instead referred the matter to the district court. On January 30, 2005, the district court entered an order granting Plaintiff's Renewed Motion to Impose Sanction of Default Judgment. Defendant's answer was stricken and declaratory judgment was entered finding Defendants jointly and severally liable for all debts, and entering judgment against each of the defendants for the sum of $264, 880. plus 5.407% interest, along with payment of all attorneys fees and expenses related to Plaintiff's attempts to obtain the documents that were the subject of the motion. (J.A. at 40.)

Defendants filed this timely appeal on February 2, 2005.

## DISCUSSION

### I.

The standard of review for a district court's order granting sanctions and fees is for abuse of discretion.[4] *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501 (6th Cir. 2002).

---

[4]We assume that the default judgment in this case was granted pursuant to F.R.C.P. 37(b), although there is no reference in the district court's opinion, Plaintiff's motion or any of the briefs before this Court to this particular rule. However, given that both parties cite to cases that deal with dismissals as sanctions pursuant to 37(b), we address the merits under the assumption that 37(b) applies here. Rule 37(b)(2) permits a court to make "'such orders . . . as are just' with regard to a party's failure to 'obey an order to provide or permit discovery, including an order made under [Rule 37(a), Motion for Order Compelling Discovery].'" *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 153 (6th Cir. 1988). One sanction permitted by the rule is "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." Fed. R. Civ. P. 37(b)(2)(C).

"An abuse of discretion exists if the district court based its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id*. (citations and quotations omitted). "The question . . . is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in doing so." *National Hockey League v. Metropolitan Hockey League*, 427 U.S. 639, 642 (U.S. 1976).

II.

"Dismissal of an action for failure to cooperate in discovery is a sanction of last resort that may be imposed only if the court concludes that a party's failure to cooperate in discovery is due to wilfulness, bad faith, or fault." *Patton v. Aerojet Ordnance Company*, 765 F.2d 604, 607 (6th Cir. 1985) (citing *Societe Internationale v. Rogers*, 357 U.S. 197 (1958)). This Circuit has taken the position, however, consistent with Supreme Court precedent, that "if a party has the ability to comply with a discovery order and does not, dismissal is not an abuse of discretion." *Regional Refuse Systems*, 842 F.2d at 154. This Court has recognized that

> the most severe in the spectrum of sanctions provided by statute or rule must be available to the District Court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*Id*. Similarly, in *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990), we expanded *Regional Refuse* to include the granting of a default judgment as a sanction, stating that dismissal "or entry of default judgment" is not an abuse of discretion if a party has the ability to comply with discovery orders but fails to do so. *Id*.

9

The *Regional Refuse* Court articulated four factors that this Circuit considers to be relevant when reviewing dismissals [and default judgments] under Rule 37, [5] namely: (1) whether the party's failure to cooperate in discovery is due to wilfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less dramatic sanctions were imposed or considered before dismissal was ordered. *Id*. at 155; *Stough v. Mayville Community Schools*, 138 F.3d 612, 615 (6th Cir. 1998); *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997); *Harmon v. CSX Transport*, 110 F.3d 364, 367 (6th Cir. 1997) (finding that it was not an abuse of discretion for the district court to grant defendant's Rule 37 motion to dismiss where plaintiffs had not complied with defendant's discovery requests or court orders for over nine months).

As a preliminary matter, we would like to address a couple of issues raised by Defendants. First of all, Defendants argue that the district court erred in entering default judgment against all the Anson Defendants because Plaintiff's request for production of documents related to the GE arbitration was propounded only upon John Anson, not upon any of the other Defendants, and therefore, any default judgment should have been issued against John Anson only. In support of this

---

[5]This Circuit has been more ready than others to reverse dismissals for disobedience to discovery orders, particularly where it appears that the party is blameless. *Regional Refuse*, 842 F.2d at 155. See *e.g. Patterson v. Grand Blanc Tp.*, 760 F.2d 686, 688 (6th Cir. 1985) (finding that the sanction of dismissal was an abuse of discretion and was "extremely harsh in that it deprives a plaintiff of his day in court due to the inept actions of his counsel."); *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980) ("Dismissal is usually inappropriate where the neglect is solely the fault of the attorney."); *Buck v. U.S. Dep't of Agric., Farmers Home Admin.*, 960 F.2d 603, 608 (6th Cir. 1992).

argument, Defendants rely upon the language from this Court's decision in *Patton v. Aerojet Ordinance Co.*, 765 F.2d 604, 606 (6th Cir. 1985), in which we stated that "'one party to litigation will not be subjected to sanctions [for failure to cooperate in discovery] because of the failure of another to comply with discovery, absent a showing that the other party controlled the actions of the non-complying party'" (citing *DeLetelier v. Republic of Chile*, 748 F.2d 790, 795 n.2 (2d Cir. 1984).

While we do not agree with Defendants' argument that default judgment was inappropriate as to all the Defendants, we do agree that the record is unclear as to why all the Anson Defendants, rather than just John Anson, should have been sanctioned. There is ample indication that John Anson himself ignored and or defied court orders and was largely uncooperative, but there is little or no mention in the district court record of the other Defendants' fault in the matter. In our supervisory role, we require that use of a "last resort" sanction like dismissal or entry of default judgment be accompanied by "some articulation" of the district court's resolution of the factual, legal and discretionary issues presented. In this case, the district court has not explained why it treated all Defendants as one for purposes of the final sanction. Nor has Plaintiff Stamtec offered any persuasive defense of the district court's expansive sanction. On this record, we can only conclude that the district court has not adequately articulated its resolution of the issues presented as they relate to the other Anson Defendants, to enable effective review.

Therefore, in the absence of clear indication from the district court as to why the default judgment is appropriate as entered against Pam Anson, Anson Industries, Anson Machine, Frankfort Properties, and Bourbon Country Products, we vacate the judgment as to those defendants and

remand the matter to the district court for a determination of whether the sanction of default appropriate as to them and, if so, for an articulation of the court's reasoning.

Hereinafter, we continue our discussion as to why the judgment was appropriate as entered against John Anson only.

Defendants also argue that the default judgment was improper where the district court did not clearly articulate in its final order, the legal and factual reasons for granting Plaintiff's motion. "A dismissal of a complaint with prejudice as a sanction for failure to cooperate in discovery must be 'accompanied by some articulation on the record of the court's resolution of the factual, legal, and discretionary issues presented.'" *Id*. (quoting *Quality Prefabrication*, 675 F.2d 77, 81 (3d Cir. 1982)). The district court's final order referred, however, to the fact that it was granting Plaintiff's motion on the basis of the entire record of the case as well as the magistrate judge's October 19, 2004 order, which addressed the dispute over the arbitration documents. Furthermore, the district court was on record as being of the opinion that Defendants' behavior in this case, and specifically the behavior of John Anson, was sanctionable. The district court opined at length about its frustration with John Anson's behavior during the December 17, 2003 hearing, and stated in its subsequent order that it would in fact allow Plaintiff to renew its motion for sanction of default judgment if the discovery abuses continued. We therefore believe that the reasons for the district court's resolution of the factual and legal issues as they relate to John Anson, are in fact articulated in the record.

> i.    Fault of the Defendant

Applying the first of the *Regional Refuse* factors, we believe that the record from the district court adequately establishes that there was wilfulness, bad faith, and fault on the part of the primary defendant in this case, John Anson. The transcript of the December 17, 2003 hearing contains numerous references to the fact that John Anson was the driving force behind the delay and lack of cooperation. The district court questioned counsel Darby about why John Anson had failed to respond to the interrogatories, at one point, asking whether Anson had "something better to do than answer interrogatories." (J.A. at 388.) At another point, the district court commended Darby for "coming in here and taking this kind of assault on what your client and your client's representatives have done, or more particularly, not done over the past 12 months." (J.A. at 384.)

The district court also explicitly referred to what it considered to be John Anson's bad faith in refusing to answer or being evasive in answers to interrogatories, stating "had the defendant been operating in good faith, he would not have simply said, 'you don't need this information until the judgment is affirmed' . . . they would have . . . gone into the court and said, I would like the court to put this matter into a class of stay until this is determined . . . ." (J.A. at 382.) The court repeatedly remarked upon the fact that this behavior predated Darby, who was the third or perhaps fourth attorney representing Defendants, and that there was a history of ignoring discovery requests and orders from the magistrate judge. In response to a suggestion that the records were simply too "massive" to readily produce, the Court challenged, "Mr. Darby, if it is so massive, where has Mr. Anson been since December of 2002? This is not something that has come up since October . . . Mr. Anson has the responsibility to provide this information . . . and you have said that this has been a

13

daily effort [to produce the requested documents]. . . And I would simply say that that is hard for this Court to believe to be a truthful statement." (J.A. at 364-65.)

The district court also referred to what it called "artful" answers, suggesting that John Anson had deliberately structured answers in such a manner to avoid actually lying in the interrogatories, but evading answering the questions. (J.A. at 374.) The district court judge further opined that he had "a distinct flavor here that there has been a 'let's see how much we can get away with' in this case . . . by Mr. Anson and the people working with him and, arguably counsel." (J.A. at 361.)

As stated in *Regional Refuse*, "[w]hile this circuit has been more ready than others to reverse dismissals for disobedience to discovery orders, especially when it appears that the party is blameless, this is not a case in which a party has simply failed to appear and no one is clearly at fault except for the party's attorney." *Regional Refuse*, 842 F.2d at 150. The Court concludes that in this case the evidence suggests that John Anson was at fault for the discovery abuses, and therefore, the first *Regional Refuse* factor is satisfied.

ii.     Prejudice

We also believe that the second requirement, that the adversary has been prejudiced by the dismissed party's failure to cooperate in discovery, is also clearly satisfied in the present case. Plaintiff's counsel continually sought Defendants' compliance with discovery-related court orders. There are letters all throughout the record, where Plaintiff implores Defendants, through John Anson, to either answer interrogatories or produce requested documents. The district court and magistrate judge also found that Plaintiff had been prejudiced by John Anson's actions. The prejudice to Plaintiff is particularly apparent with regard to the arbitration documents. As stated by the

magistrate judge, as a result of John Anson's behavior in failing to produce the arbitration documents, and failing to reveal that counsel had never even sought the documents, Plaintiff "was needlessly forced to move to formally intervene [in the arbitration action with GE]." (J.A. at 290.) John Anson's behavior caused Plaintiff's counsel to participate in no fewer than four telephone conferences regarding this issue, during which, Darby misrepresented to the magistrate judge that GE was not cooperating in producing the documents when it was in fact Defendants' counsel who never sought the documents. We can only imagine the embarrassment that Plaintiff suffered once it received GE's response to its motion to intervene, in which Plaintiff accused GE of conspiring with Defendants to "hinder and delay Stamtec in collecting its judgment." (J.A. at 414.) Moreover, John Anson still did not produce the requested arbitration documents until after Plaintiff had gone through all these various hearings, and numerous motion. We therefore hold that Plaintiff was prejudiced by John Anson's behavior.

### iii. Prior Warnings

As discussed above, John Anson was repeatedly warned that failure to cooperate could lead to entry of default judgment. The district court made it abundantly clear that it specifically considered John Anson's behavior to be grounds for dismissal as early as the December 17, 2003 hearing, telling John Anson and his counsel that they were getting the "last bite in the apple" and dismissing Plaintiff's motion without prejudice and warning that Plaintiff would be allowed to renew the motion if the behavior did not change. Even prior to that hearing, however, the magistrate judge had indicated that Defendants had delayed long enough in complying with discovery requests. The record is rife with instances in which the court below warned John Anson that his continued

engagement in obstructionist behavior could resort in entry of a judgment against him and the other Anson Defendants, but John Anson not only continued his pattern of behavior, but escalated into blatantly misleading the court on the matter of the arbitration documents. As a result, we believe that John Anson was on notice about the consequences of his behavior, and that the third *Regional Refuse* factor is met.

iv. Less Drastic Sanctions

Lastly, the record reveals that less drastic sanctions were imposed before the default judgment was entered against Defendants. The district court's order of January 28, 2004 awarded Plaintiff's counsel compensation in the amount of $3,260 for the time he "expended in attempts to obtain compliance with the magistrate judge's discovery order." (J.A. at 218.) The evidence shows that the district court did not hastily enter the default judgment, and had in fact openly contemplated the harshness of such an action during the December 17, 2003 hearing. At the hearing, the district court expressed its reluctance about enforcing the sanctions, but warned that it would not tolerate Defendants' continuing to "see how much they could get away with." It appears from the record that the district court felt that Defendants, and especially John Anson, were deliberately flouting the authority of the court, knowing that the sanction of default judgment is, as the case law reveals, a "last resort." It seems that in this case, John Anson went too far, ignored the court's warnings, and did not appreciate, even after being warned and ordered to pay Plaintiff's counsel's expenses, that this particular district court was serious about not tolerating further discovery abuses.

In light of a record chock-full of evidence of flagrant discovery abuses and even misrepresentations to the district court and magistrate, we decline to reverse the default judgment against Defendant John Anson.

## CONCLUSION

For the reasons set forth in this opinion, we **AFFIRM** in part and **VACATE** in part. We **AFFIRM** the default judgment as entered against John Anson, but **VACATE** the default judgment as to the remaining Anson Defendants, and **REMAND** the matter to the district court for further proceedings, which may include reconsideration and clarification as to whether and why entry of default judgment is appropriate with respect to the other Anson Defendants.